Edgar J. Nathan, Jr., J.
Plaintiffs bring this action for a judgment declaring that a regulation adopted by the defendant commissioner of licenses of the City of New York is invalid, and for injunctive relief incidental to the enforcement of such a judgment. The facts disclose that this is a proper case for declaratory relief. (See Acorn Employment Service v. Moss, 292 N. Y. 147, 153.) The fact that plaintiffs applied for and obtained licenses, does not bar them from attacking the licensing powers of the commissioner in this proceeding.
Plaintiffs are owners and operators of two separate laundromats in the city of New York. The laundromats offer a clothes-washing and drying service to the public and function with fully automatic coin-operated washing and drying machines. They are located in typical one-story commercial premises and are open to the public 14 hours a day. It was plaintiffs’ intention that these self-service laundromats operate without the aid or assistance of an employee on the premises, thus permitting a lower charge to the customer than those offering a similar service operated by paid employees.
Each plaintiff made application to defendant, pursuant to article 23 of chapter 32 of the Administrative Code of the City of New York, for a license to operate a “laundry”. The defendant, commissioner of licenses, took no action on these applications until after the promulgation of regulation 20, which states:
‘ ‘ 20. Adequate supervision of licensed premises:
“ The premises of licensed laundries must be adequately attended at all times during the operation thereof.”
Thereafter plaintiffs were informed by defendant that their applications would not be approved nor any license issued until they submitted an affidavit stating that their store would be ‘ ‘ adequately attended at all times during the operation thereof. ’ ’ Plaintiffs furnished such a letter and were subsequently issued licenses to operate as “ laundries ”.
Plaintiffs claim, among other things, that regulation 20 is invalid in that: (1) it cannot be enforced against plaintiffs, for they do not operate “ laundries ” as defined by section B32-167.0 (art. 23, ch. 32) of the Administrative Code; (2) the commissioner of licenses exceeded his authority in issuing said regulation, the regulation not being within the scope of the powers *320 conferred by section 885 of the New York City Charter; and (3) if the regulation is held to be within the powers conferred by that section, it is an unlawful delegation of legislative power to an administrative officer.
Is an unattended laundromat of the type described herein, a “ laundry ” within the meaning of section B32-167.0 of article 23 of the Administrative Code! That section provides that:
1 ‘ Whenever used in this article the word ‘ laundry ’ shall mean and include:
“ 1. Any place, which is used for the purpose of washing, • drying, starching or ironing, for the general public, wearing ■apparel, household linens, or other washable fabrics, or a place used or maintained for the storage, collection or delivery of such articles for such service, or
“2. Any place maintained by a person dealing in laundry service either as an independent contractor or jobber, or any private laundry maintained or operated in connection with any hotel, restaurant or public institution, whether for the tenants, customers or inmates of the same or otherwise, except a hospital or charitable institution where no charge is made for laundry services.
“ 3. Any person dealing in laundry service as an agent-driver, using his own vehicle and working for a processing plant on a commission basis.”
Although a laundromat may fairly be considered a form of laundering service, nevertheless, it does not appear that it was the legislative intent of article 23 to regtalate unattended laundromats. The statute when read in its full context is not consistent with any such interpretation. It can hardly be that the Legislature intended to regulate a service which, at the time of this legislative enactment, was in its infancy, if it existed at all. Public acceptance of laundromats came sometime after the enactment of this statute, which argues strongly against any specific legislative intent to regulate them.
Nor is the regulation of laundromats consistent with the general purpose and intent of this legislation, which is to protect the public against loss or damage to property of the customer or the conversion of his property. When the property is owned by the laundry or, as here, where the property is at all times in the possession and control of the customer, the primary purpose of the statute ceases to be served. (See People v. Jacobs, 301 N. Y. 456; People v. 34th St. Hotel Co., 160 Misc. 243.)
In view of the provisions of article 23 of the Administrative Code relating to the application for a license (§ B32-169.0) and to the fee and bond required (§ B32-171.0),. the statute applies *321 only to a public laundry operated by a number of employees. (See People v. Benc, 288 N. Y. 318.) Despite the fact that laundromats offer a service for the general public, they are not considered to be laundries within the statute when no employees or attendants are necessary to the operation of the automatic machines, their operation being subject only to the will of the one desiring to use it.
Accordingly, the court holds that laundromats of the type described herein are not laundries under article 23 of the Administrative Code and therefore no license is required.
The court also finds, however, that even if plaintiffs’ business were within the licensing powers of the commissioner, he exceeded his authority in issuing regulation 20. The commissioner of licenses is an administrative official, with the power and the duty to grant, renew or revoke licenses and to collect the appropriate fees therefor. (New York City Charter, ch. 32.) In exercising such powers with respect to laundries, he is limited to the standards prescribed by article 23 of the Administrative Code, specifically section B32-169.0 which provides :
‘ ‘ Application; special requirements. — a. The application for a license or for any renewal thereof to conduct a laundry shall be in writing and shall state the specific location where laundry work is processed and the maximum number of persons to be employed therein. The commissioner, before issuing any such license, shall cause an investigation to be made of the premises named and described in such application, for the purpose of determining whether the provisions of the sanitary code, building code, state industrial code, state minimum wage law, local laws, regulations of municipal agencies and other requirements of this article are fully complied with.
“ b. If the commissioner shall be satisfied that the proposed laundry and the premises wherein it is located conform to the provisions of this article and other laws relating thereto, he shall issue or cause to be issued a license authorizing such applicant to establish, maintain, conduct or operate a laundry at the place designated in such application for and during the period of such license.”
There is nothing in the above section or any other section of article 23 which confers upon the commissioner the discretionary power to issue the regulation in question. There is no existing legislative policy on having self-service laundromats unattended and the commissioner of licenses has no power to declare such a policy or to create such a legislative standard. He may only apply the policy declared and the rules and standards laid down in the statute.
*322 The commissioner contends that by virtue of section 885 of the New York City Charter he may make reasonable ” rules and regulations for the conduct of his department to carry out its powers and duties ”, and that regnlation 20 is a reasonable rule and a valid exercise of such power. This section confers upon the commissioner mere administrative, not legislative power. (Acorn Employment Service v. Moss, 292 N. Y. 147, supra.) This power can only be exercised pursuant to some legislative authority conferred upon the commissioner and within the limitations established by the Legislature.
Furthermore, the question of whether regulation 20 is a reasonable and necessary requirement for the safety and convenience of the public is not in issue here. Such power as the city has to protect property and care for the safety, health, comfort and general welfare of its inhabitants is vested in the City Council, not in the commissioner of licenses or other administrative officers. (General City Law, § 20.) However reasonable and necessary the commissioner’s regulation may be, it was not authorized by the provisions of article 23 or any other legislative enactment. In adopting a rule that was neither expressly nor by implication an incident to legislative authority, he has exceeded his power and the regulation is invalid. (Matter of Natilson v. Hodson, 289 N. Y. 842, 843; Matter of Small v. Moss, 279 N. Y. 288, 295; Matter of Executive Service Corp. v. Moss, 256 App. Div. 345, 347.)
In view of this opinion, it is unnecessary to consider other points raised by plaintiffs in support of this relief.
Settle judgment in accordance with this opinion.