OPINION OF THE COURT
Gene L. Catena, J.
As a result of several complaints made by certain citizens of the City of Amsterdam, the State Investigation Commission (herein referred to as SIC), in early 1977, undertook an investigation into alleged wholesale gambling within the city. *1099 In order to properly conduct the investigation, SIC enlisted the aid of New York City Police Commissioner Michael Codd. Approximately eight members of the New York City police force were "loaned out” to the SIC for the duration of the investigation. These police officers, together with SIC investigators, came to Amsterdam and made certain observations involving gambling in the city. These observations were reported to Robert T. Nicholson, who was then employed as chief investigator for the SIC. Eventually, Mr. Nicholson prepared, or caused to be prepared, an application and affidavits for search warrants of premises located at 134 Division Street, Amsterdam, New York, and of the persons of Arthur Ausfeld, among others, and the person of Carmen Cardillo, and his automobile and home located at 111 Yale Street, Amsterdam, New York. On May 23, 1977, Mr. Nicholson, accompanied by a SIC attorney, went to the chambers of Supreme Court Justice Burton Roberts in New York City. Based upon the application and accompanying affidavits, Justice Roberts issued the desired search warrants. Thereafter, the search warrants were executed by members of the New York City police force and SIC investigators and certain property was seized.
Defendants moved for suppression of the evidence seized on the ground that the SIC had no statutory authority to apply for and obtain the search warrants. The SIC was allowed to appear as amicus curiae and it contends that Robert T. Nicholson, in his capacity as chief investigator of the SIC, was a public servant acting in the course of his official duties as specified by CPL 690.05, and was therefore an authorized applicant for the search warrants at issue in this case. The SIC argues further that the Legislature explicitly empowered an agent of the SIC to apply for a search warrant because, in 1958 at the time the SIC was created, an application for a search warrant could be made by any peace officer (Code Grim Pro, §§ 791, 797-a); that an agent of the SIC was among those designated by statute as a "peace officer” (Code Crim Pro, § 154) and that although this was later changed by deleting the words "peace officer” and substituting "police officer * * * or other public servant acting in the course of his official duties”, "there is no evidence that the Legislature thereby intended to abolish the long-held power of the SIC to apply, through its investigators, for search warrants.” The court notes that the argument advanced is that the SIC was given *1100 explicit authority through its investigators to apply for search warrants. The SIC does not say that it has that authority by virtue of the statute creating it but rather, it has it because an SIC agent is given that authority. I disagree with that argument for the reason that Mr. Nicholson’s authority depends wholly on the authority of the SIC to obtain search warrants. Certainly, if the SIC has no such authority, it cannot be said that Mr. Nicholson was acting in the course of his official duties when he applied for them. It seems to me that the power of the SIC to apply for a search warrant must be found in the statute and not otherwise.
Directly in point is the case of Matter of B. T. Prods. v Barr (44 NY2d 226). In that case, the Organized Crimes Task Force employed a State Police officer to obtain a search warrant in its behalf. Judge Gabrielli, writing for the majority of the court, stated (supra, at pp 234, 235): "While a State Police officer qua police officer does indeed have the authority to apply for a search warrant in pursuance of his police duties, he does not have such power when he is acting solely as an agent of a State agency which does not itself have that authority.” It becomes evident then, that Mr. Nicholson is acting within the course of his official duties only if the SIC has the statutory authority to apply for and obtain search warrants, and the execution of the search warrants by New York City police officers will not cure it. The question to be determined then, is whether the SIC has the authority to obtain a search warrant.
A plain reading of the statute creating the SIC (L 1958, ch 989) is clear and unambiguous. The SIC has investigative powers only. It has no more powers than that granted it by the Legislature and that power must be found "within the boundaries of the Legislature’s mandate”. (Matter of Pooler v Public Serv. Comr., 89 Misc 2d 700, 702; People v Mitchell, 40 AD2d 117.) The investigative powers and duties of the SIC are set forth in section 2 of chapter 989 of the Laws of 1958 and it is not necessary to outline them here.
It can be said that the SIC has wide, general investigatory authority, like the Organized Crime Task Force, to administer oaths, subpoena witnesses, examine them under oath, "require the production of any books, records, documents or other evidence” (L 1958, ch 989, § 2, subd 11, par c), impound exhibits marked in evidence (L 1958, ch 989, § 6) and grant immunity to witnesses (L 1958, ch 989, § 7). As was pointed *1101 out in the Barr case, (44 NY2d, at pp 235-236), "[n]owhere in this broad grant of investigatory power, however, is there any mention of the power to obtain or apply for a search warrant * * * and such power is not to be implied in light of the limited specific powers which are given.” I can find no discernible difference in substance between the powers (or lack thereof) granted to the Organized Crime Task Force in section 70-a of the Executive Law and those granted (or withheld) the SIC in chapter 989 of the Laws of 1958. There is no question that by express authority (CPL 690.05) a police officer or public servant acting in the course of his official duties is authorized to apply for a search warrant. Chapter 989 of the Laws of 1958 did not extend this authority to the SIC.
Upon the authority of Matter of B. T. Prods, v Barr (supra), therefore, the court finds that the SIC lacked the power to apply for the search warrants in issue and, accordingly, motion to suppress the evidence seized is granted.